UNITED STATES of America, Appellee,

v.

Nathan PORTNER, Defendant-Appellant.

No. 264, Docket 71–1826.

United States Court of Appeals, Second Circuit.

Argued Nov. 3, 1971.

Decided June 22, 1972.

Howard Wilson, Peter F. Rient, Asst. U. S. Attys., Whitney North Seymour, Jr., U. S. Atty., for appellee.

Henry K. Chapman, New York City, for defendant-appellant.

Before WATERMAN, SMITH and TIMBERS, Circuit Judges.

WATERMAN, Circuit Judge:

The appellant, Nathan Portner, was indicted on July 23, 1970, along with two employees of the Merchants Bank of New York, Rebecca Tolkoff and Joseph Calabro, for conspiracy willfully to misapply monies of the bank and to make false entries in the bank's books with intent to injure and defraud the bank and to deceive its officers, in violation of 18 U.S.C. §§ 371, 656, and 1005. The conspiracy was alleged to have existed continuously from August 1959 to June 1968. In addition to the conspiracy count, there were 70 additional substantive counts in the indictment, charging that the three co-defendants regularly made false entries in the bank's records on the last banking day of each month and on the succeeding first banking day of the next month from July 30, 1965 to June 3, 1968, in violation of 18 U.S.C. §§ 1005 and 2. These substantive counts were also listed as overt acts done in furtherance of the conspiracy charged in the conspiracy count. At the conclusion of a three day trial before Judge Tyler, sitting without jury in the United States District Court for the Southern District of New York, the judge was satisfied that the Government had proved beyond a reasonable doubt the guilt of appellant on all of the counts and, from the bench, in a lengthy statement orally gave his substantiating findings and his conclusions of law thereon.[1]

The single issue before us is whether the court below erred in refusing to hold that prosecution of Portner was barred by the five-year period of limitation provided for by 18 U.S.C. § 3282. The pertinent facts relating to this issue are detailed below. We affirm the conviction.

The defendant in 1959 was doing business with the Merchants Bank of New York under the name of Car Buyers. Sometime in May of that year Portner telephoned the head bookkeeper at the Canal Street office of the bank, Rebecca Tolkoff, in order to find out which of his checks had been cashed. This was the first of several telephone calls of a similar nature. By early July Miss Tolkoff was sufficiently acquainted with Portner's account so that she agreed with him to honor for payment a few of his checks when presented despite the fact that he had insufficient funds on deposit for them to be paid in ordinary course.

In order to further their conspiratorial scheme the unpaid sums of these checks written by Portner on the Car Buyers account were falsely charged against other unrelated accounts, accounts which always had relatively large balances of around six figures month by month. Within a week after Portner and Tolkoff had entered into their agreement Tolkoff had set aside checks totaling $26,000 drawn on the Car Buyers account before any charges or debits were made against that account.

Portner, however, was in tough financial straits and, despite repeated reassurances to Miss Tolkoff that he would deposit sufficient funds to pay his overdrafts, he did not bring in any money to cover the improperly paid checks. After the scheme had been in operation for a couple of weeks Tolkoff was nervous enough about the situation to consult with her superior, Joseph Calabro, on the matter.

Calabro, who was the head bookkeeper for the entire Merchants Bank, then

---

1. Appellant was sentenced to a prison term of five years on Count 1, the conspiracy count, but was placed on probation for the five year period. A special condition of the probation is that appellant make restitution in an amount not to exceed $10,000. Imposition of sentence on Counts 2 through 71 was suspended and appellant was placed on probation for the same five year period as imposed on Count 1.

called Portner and received basically the same assurances that Portner had been giving Becky Tolkoff. So convinced was Calabro that Portner would ultimately make his bad checks good that Calabro, himself, collaborated with Tolkoff and Portner and later agreed to the payment of an additional $12,500 worth of Car Buyers checks by debiting other customer accounts, which was done by charging a large account at the start of each month with the full amount of the shortage and at the end of the month that shortage would be removed before the account received its monthly statement, and for the period of a day or two at the end of each month the shortage would not be discovered because of inter-branch transfer of accounts. This method, begun in 1959, was continued until mid-1968.

In August 1959 the Car Buyers account was closed out, a new account was opened, and other arrangements were made, but the upshot of it all was that by November 1959 the amount of misapplied monies had increased to $66,000 and the anxiety of the bookkeeper confederates had been increasing at a similar pace. During the intervening period Portner was contacted several times, was exhorted to make good on his withheld checks, and was always ready with a promise of payment. Moreover, during this time Portner was aware that Tolkoff was making false entries in the bank's books in order to conceal the payments of the fraudulent drafts. Appellant's apparently convincing reassurances continued to be made until the end of 1959 when he disappeared. In 1968 he was found operating an automobile business in New Jersey, was interviewed by FBI agents and denied having had any banking connections with the Merchants Bank.

Appellant's contention is that he only conspired with his co-conspirators to misapply the bank funds and that this conspiracy, or any conspiracy to which he was a party, was completed by No-

vember 1959 when the last of his worthless checks was set aside. He claims that the false entries in the bank's records made after November 1959 were made by the bank employees, Tolkoff and Calabro, solely on their own initiative for the purpose of concealing their criminal misapplication of the bank's funds. If we were to accept this view of the agreement the co-conspirators agreed to in 1959, the prosecution of Portner would be clearly barred by 18 U.S.C. Section 3282, for, in Grunewald v. United States, 353 U.S. 391, 405, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957) the Supreme Court ruled that "acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime" are quite different in their legal consequences; and that the latter may not be used to lengthen the period of the duration of the conspiracy for the purpose of causing the prosecution to have been brought prior to the expiration of the date set by the statute of limitations. It is the Government's position that the conspiracy was not, in fact, so limited, and that the acts of concealment here were done in furtherance of the main criminal objectives of the conspiracy contemplated at the time it was entered into. The trial court so found and an analysis of the evidence fully sustains such a finding.

Indeed, on this record, it must be concluded that Portner did not, as he would have us believe, enter into any conspiracy with his co-conspirators that ended when he disappeared. The object of this conspiracy was not to rob the bank or its depositors and then to run with the fruits of the robbery. All the parties to this conspiracy understood when they mutually agreed to enter into it in 1959 that its only objective was to misapply funds for Portner's benefit so as to take care of his then worthless checks; and then to continue to conceal the misapplication until such time as Portner ful-

filled his promises to his co-conspirators, made his checks good, and cleaned up his overdrafts.

From the inception of the conspiracy, from early 1959 before Portner disappeared until June 1968 when Miss Tolkoff disclosed to bank authorities what she had been doing, the two bank employees made precisely the same acts in furtherance of the objects of the conspiracy; the records were falsified in no different manner after 1959 from the method used during that year.

Most assuredly it defies common sense to believe that Tolkoff and Calabro would have ever entered into their arrangement with Portner to honor clandestinely Portner's bad checks without an understanding by Portner that he would make the checks good. Thus, in this case, as in United States v. Hickey, 360 F.2d 127, 141 (7 Cir.), cert. denied, 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966), the conspiracy necessarily encompassed the clandestine repayment of the misapplied funds.

Clearly, the concealment of the misapplication of funds through the making by Tolkoff and Calabro of false entries in the bank's records was in furtherance of a continuing conspiracy. Indeed, it was crucial to the success of the conspiracy for, without such concealment, the misapplied funds would have been quickly discovered by the bank authorities long before the object of clandestine repayment could have been achieved. As was found by the court below, Portner knew that a main criminal object of the conspiracy was to conceal the wrongful processing of his worthless checks, and there was ample evidence to support the finding that Portner was aware that this concealment was being accomplished by the making of false entries in the records of the bank. Pursuant to the object of the conspiracy which the parties entered into in 1959 the bank's records continued to be falsified until 1968. We therefore conclude that the last overt act in furtherance of the conspiracy into which the appellant entered in 1959 took place in 1968. We agree with the trial judge that the statute of limitations did not bar prosecution of appellant.

Conviction affirmed.