UNITED STATES of America,
Appellee,

v.

Frank J. BRASCO, De-
fendant-Appellant,

Joseph Brasco, Defendant.

No. 777, Docket 74–2484.

United States Court of Appeals,
Second Circuit.

Argued March 31, 1975.

Decided May 21, 1975.

Certiorari Denied Oct. 6, 1975.

See 96 S.Ct. 116.

Herbert A. Lyon, Kew Gardens, N. Y. (Lyon & Erlbaum, Kew Gardens, N. Y., Gretchen White Oberman, New York City, Spiros A. Tsimbinos, William M. Erlbaum and Charles Wender, Kew Gardens, N. Y., on the brief), for defendant-appellant.

Barbara Jones Ambler, Sp. Atty., Dept. of Justice (Paul J. Curran, U. S. Atty., S.D.N.Y., Lawrence S. Feld and John D. Gordan, III, Asst. U. S. Attys., S.D.N.Y., on the brief), for appellee.

Before ANDERSON, MANSFIELD and OAKES, Circuit Judges.

**PER CURIAM:**

Frank Brasco appeals from a judgment of conviction entered on October 21, 1974 after a jury trial, based upon a single count indictment charging him, then a member of the House of Representatives of the United States Congress,' and his uncle, Joseph Brasco,[1] with a conspiracy to influence the United States Post Office Department (Post Office) to award valuable contracts to one John Masiello for the hauling of mail in return for money in violation of 18 U.S.C. § 371.[2] We affirm.

The appellant's contention that the evidence was insufficient for conviction is clearly without merit. Viewing the evidence on appeal in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Raymond Johnson, 513 F.2d 819 (2 Cir. April 1, 1975); United States v. Koss,

---

1. The district court judge before whom the case was originally brought declared a mistrial and granted a severance to Joseph Brasco on March 4, 1974, after the latter suffered a stroke, and declared a mistrial as to Frank Brasco on March 19, 1974, after the jury was unable to agree upon a verdict. The Government's case against Frank Brasco was then reassigned to another district court judge.

2. 18 U.S.C. § 371 makes it a crime for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose . . . ." Frank and Joseph Brasco were charged with a conspiracy to defraud the United States, and also to receive bribes (18 U.S.C. § 201), to violate the statutory prohibition against conflicts of interest by Congressmen (18 U.S.C. § 203), and to violate the mail fraud statute (18 U.S.C. § 1341).

506 F.2d 1103, 1106 (2 Cir. 1974), the jury was entitled to find that appellant's efforts to regain and secure the contract for Masiello established his involvement in a conspiracy to defraud the United States by depriving it of the faithful and honest services of himself and Doherty, a Post Office official; that appellant asked Doherty to advise Masiello what competitive bid to make on a contract, and that Doherty subsequently gave Masiello that advice in Frank Brasco's office; and that appellant schemed with Doherty and one Joseph Weiner to have Masiello re-offer his trucks to the Post Office through companies which would only appear to be independent of Masiello. These actions were clearly violative of the "conspiracy to defraud" provisions of 18 U.S.C. § 371. See, e. g., United States v. Johnson, 383 U.S. 169, 172, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966); Haas v. Henkel, 216 U.S. 462, 476–480, 30 S.Ct. 249, 54 L.Ed. 569 (1910); United States v. Peltz, 433 F.2d 48, 51–52 (2 Cir. 1970), cert. denied, 401 U.S. 955, 91 S.Ct. 974, 28 L.Ed.2d 238 (1971); United States v. Sweig, 316 F.Supp. 1148, 1155–1156 (S.D. N.Y.1970), aff'd on another issue, 441 F.2d 114 (2 Cir.), cert. denied, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971).

Moreover, the jury was justified in concluding that Frank Brasco had conspired to receive a bribe (18 U.S.C. § 201). Masiello's testimony that he delivered $10,000 to Joseph Brasco to be delivered "down below," coupled with the testimony of Doherty and Weiner that Frank Brasco appointed Joseph Brasco to be the "bag man" for his part in getting the loan for Masiello, was sufficient to show that the $10,000 delivered by Masiello to Joseph Brasco was destined for Frank Brasco.

■ Appellant's contention that his prosecution for conspiracy was time-barred by 18 U.S.C. § 3282's five year limitations period is equally baseless. Because the indictment was filed on October 23, 1973, the Government was only required to show that one overt act in furtherance of the conspiracy occurred after October 23, 1968, in order to avoid being time-barred. See Grunewald v. United States, 353 U.S. 391, 396–397, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); United States v. Portner, 462 F.2d 678, 681 (2 Cir.), cert. denied, 409 U.S. 983, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972). The evidence demonstrated that in November, 1968, appellant asked Doherty what the chances were for two new pending Masiello bids; that Masiello supplied trucks to the Post Office in the name of an ostensibly independent firm until October 26, 1968; and that Masiello once again bid for the hauling contracts through a nominee on November 15, 1968. Since appellant did not meet his burden of establishing that he had withdrawn from the conspiracy (see United States v. Goldberg, 401 F.2d 644, 648 (2 Cir. 1968), cert. denied, 393 U.S. 1099, 89 S.Ct. 895, 21 L.Ed.2d 790 (1969), he was bound by these acts whether or not he performed or was aware of them. See Pinkerton v. United States, 328 U.S. 640, 645–647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

■ Nor, as alternatively argued by appellant, did the long delay in procuring an indictment deny him a fair trial. Any delay was excusable, non-deliberate, and not used by the prosecutor to gain strategic advantage. See United States v. Marion, 404 U.S. 307, 325–326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); United States v. Brown, 511 F.2d 920, 923 (2 Cir. 1975). No actual prejudice was shown. See United States v. Marion, supra; United States v. Brown, supra; United States v. Mallah, 503 F.2d 971, 989 (2 Cir. 1974).

■ Appellant next contends that his Sixth Amendment right of confrontation was denied by the introduction of Masiello's first-trial testimony during the second trial after Masiello claimed his Fifth Amendment privilege despite a grant of immunity. The record reveals that the trial court declared Masiello's in-person testimony unavailable and permitted the former testimony to be introduced as an exception to the hearsay rule after the witness refused to testify

first on June 27, 1974, and was adjudged guilty of civil contempt, and then again on July 1, 1974 despite notice that he had until that date to either purge himself or show cause why he should not be found guilty of criminal contempt.[3] As the appellant had had adequate opportunity to cross-examine the witness at the first trial (see, e. g., California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); Pointer v. Texas, 380 U.S. 400, 406–407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)), and there was an identity of issues between the proceedings, the foregoing adequately demonstrates that Masiello was truly unavailable. See Mason v. United States, 408 F.2d 903 (10 Cir. 1969), cert. denied, 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441 (1971); United States v. Mobley, 421 F.2d 345 (5 Cir. 1970). Cf. United States v. Singleton, 460 F.2d 1148, 1152–1153 (2 Cir. 1972).

 Appellant also contends that the trial judge erred in denying his posttrial motion for a new trial based upon alleged violations of the court's sequestration order by members of the jury or marshals assigned to supervise them. Where an unauthorized private communication, contact, or tampering with a juror during a trial does not relate to a matter pending before the jury, there is no right to a new trial absent a showing of prejudice by the defendant. See United States v. Berger, 433 F.2d 680, 686 (2 Cir.), cert. denied, 401 U.S. 962, 91 S.Ct. 970, 28 L.Ed.2d 246 (1971). Despite an unauthorized and systematic post-trial investigation of jurors on his behalf with the knowledge of his attorney,[4] appellant failed to show that any communications or contacts made during unauthorized juror visits to homes, beauty parlors, and barber shops, or unauthorized telephone calls, related to matters pending before the jury, or prejudiced him in any way. In such circumstances, even if it is assumed that a hearing should have been held on these allegations (see United States v. Gersh, 328 F.2d 460, 464 (2 Cir.), cert. denied, 377 U.S. 992, 84 S.Ct. 1919, 12 L.Ed.2d 1045 (1964)), the lack of a hearing would at most be harmless error.

Where it appears, however, that an unauthorized private communication, contact, or tampering, directly or indirectly, with a juror during the trial did in fact relate to a matter pending before the jury, the communication is presumed prejudicial and a new trial must be granted unless the Government can establish at a hearing "that such contact with the juror was harmless to the· defendant." Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). At a post-trial hearing concerning the newspaper article describing the reading of Masiello's first trial testimony to the jury, only two jurors testified that they noticed the article, but they both asserted that they· had not read it. The trial judge was entitled to credit this testimony and the denial of appellant's motion was not "clearly erroneous." See Morgan v. United States, 399 F.2d 93, 97 (5 Cir. 1968), cert. denied, 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 568 (1969).

Appellant's other contentions on appeal are wholly without merit and do not warrant any further discussion.

The judgment of the district court is affirmed.

---

**3.** The trial judge ultimately sentenced Masiello to one year and a day to run consecutively to his other pending sentences.

**4.** Such complicity by counsel in a planned, systematic, broad-scale, posttrial inquisition of the jurors by a private investigator or investigators is reprehensible, to say the least. The trial court was correct in stating, 385 F.Supp. 966, 970, note 5, that where a full dress inquiry of this sort was intended to be launched, ". . . post-trial questioning of jurors must only be conducted under the strict supervision and control of the court, with inquiry restricted to those matters found by the court as both relevant and proper."