[No. S067155. July 15, 1999.]

ANTHONY LETRICE TOWNSEL, Petitioner, v.
THE SUPERIOR COURT OF MADERA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Fern M. Laethem, State Public Defender, under appointment by the Supreme Court, Paul M. Gerowitz and Kate A. Johnston, Deputy State Public Defenders, for Petitioner.

No appearance for Respondent.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edgar A. Kerry and Louis M. Vasquez, Deputy Attorneys General, for Real Party in Interest.

OPINION

WERDEGAR, J.—Petitioner Anthony Letrice Townsel was sentenced to death by the Madera County Superior Court on September 13, 1991, following his conviction of two counts of murder and other offenses; his automatic

appeal (*People* v. *Townsel*, S022998)[1] is currently pending before this court. Petitioner seeks relief from an order of respondent superior court, entered sua sponte, prohibiting his appellate counsel from contacting trial jurors without first obtaining that court's approval. The question is whether the trial court had authority to issue the order and, if so, whether it abused its discretion in doing so.

If the trial were held today, the issue likely would not arise. This is because the Legislature has recently enacted statutes, and amended existing ones, to maximize juror privacy and safety, while retaining a criminal defendant's ability to contact jurors after the trial if sufficient need is shown. Thus, Code of Civil Procedure[2] sections 237 and 206, as presently written, require that the personal information of jurors, such as their names, addresses and telephone numbers, be sealed automatically following the recording of the verdict in a criminal case. (§ 237, subd. (a)(2).) "Any person" seeking such information must petition the court and show good cause for disclosure. (*Id.*, subd. (b).) More specifically, a criminal defendant or defense counsel may obtain this information if he or she petitions the court and demonstrates such information is "necessary" for a new trial motion or "any other lawful purpose." (§ 206, subd. (f).) Attorney contact with jurors is permissible, but subject to sanctions for nonconsensual or unreasonable contact. (§ 206, subds. (a)-(d).) Sections 237, subdivision (a) and 206, subdivision (f), however, do not apply to this case, because the Legislature expressly made them applicable only to cases in which the jury verdict was returned on or after January 1, 1996. (§ 237, subd. (a)(4).) Thus, the only statutory provisions protective of juror privacy and safety applicable to the present case are set forth in section 206, subdivisions (a) to (d).

As we shall explain, notwithstanding the Legislature's enactment and expansion of statutory procedures governing attorney contact with jurors after a jury trial has ended, trial courts have always possessed the inherent power to protect jurors' physical safety and privacy. Nothing in the exercise of a court's inherent power in this respect is inconsistent with present statutory guarantees. Nor did respondent court, in entering the no-contact order in the present case, abuse its inherent discretion. Rather, respondent, in the exercise of its inherent power, was merely acting as a gatekeeper to ensure that any juror contact by petitioner's counsel (or a representative of petitioner), now almost a decade after the jury verdict in a capital case, is both consensual and reasonable.

---

[1] The request by the Attorney General, for the real party in interest, to take judicial notice of the pleadings filed in S022998, is granted. (Evid. Code, § 452, subd. (d).) His further request for judicial notice of the record in the present proceeding (S067155) is denied as unnecessary.

[2] All further statutory references are to this code unless otherwise stated.

## Facts and Procedural Posture

The challenged order arose out of proceedings to correct and augment the record in petitioner's automatic appeal. On August 22, 1997, following a hearing on record correction, respondent superior court denied without prejudice petitioner's request to augment the record to include unredacted juror questionnaires. Petitioner renewed his request, specifically calling respondent's attention to California Rules of Court, rule 39.51(a)(1), which provides that the record in a capital case shall include juror questionnaires. Respondent then reversed its earlier ruling to permit inclusion in the appellate record of unredacted juror questionnaires. On its own motion, however, respondent ordered that "there's to be no jury contact without prior court approval. In other words, if you do come upon a juror questionnaire that you do want to contact that person, then you'll have to petition the Court, giving forth your reasons before that would be granted." Respondent later stated that petitioner's counsel must show "good cause" or "probable cause" before the court would allow her to contact the jurors. When counsel asked respondent the legal basis of its no-contact order, respondent was unable to cite specific authority, but opined: "I just think it's only fair that jurors not be contacted unless there's some cause, not to go out and disturb them on a fishing expedition."

In response to petitioner's request for relief, we issued an alternative writ of mandate requiring respondent either to vacate its no-contact order or, in the alternative, to show cause before this court why the relief petitioner seeks should not be granted. Respondent has not appeared in this court. The Attorney General, on behalf of the People, real party in interest, filed a return, in response to which petitioner filed a traverse.

## Discussion

We previously explained the nature of proceedings for extraordinary relief in *People* v. *Romero* (1994) 8 Cal.4th 728, 742-743 [35 Cal.Rptr.2d 270, 883 P.2d 388]: "As with the writ of habeas corpus, the California Constitution grants this court, the Courts of Appeal, and superior courts original jurisdiction to issue writs of mandate [and prohibition]. (Cal. Const., art. VI, § 10.) The purpose of the writ of mandate is 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he [or she] is entitled, and from which he [or she] is unlawfully precluded by such inferior tribunal, corporation, board or person.' (Code Civ. Proc., § 1085. [See also § 1102 (writs of prohibition).]) As with habeas corpus, the party seeking mandate relief makes application by

filing a verified petition. (*Id.*, § 1086.) If the petition appears sufficient on its face, the court may issue an alternative writ, which is analogous in some ways to the writ of habeas corpus or order to show cause. The alternative writ commands the respondent either 'to do the act required to be performed, or to show cause before the court . . . why he [or she] has not done so.' (*Id.*, § 1087.) As in a habeas corpus proceeding, the respondent or real party in interest may then file a return explaining why the petitioner is not entitled to the requested relief (*id.*, § 1089), the petitioner may then submit an answer (*id.*, § 1089.5), and an evidentiary hearing may be held to resolve contested issues of fact (*id.*, § 1090). If, after these proceedings on the alternative writ, the court concludes that the petitioner is entitled to the relief requested, the court then grants the relief by directing issuance of a peremptory writ of mandate. (*Id.*, § 1095.)" (Text in first and fourth set of brackets added.) Because the parties do not contend the case presents contested issues of fact requiring resolution, and the question of respondent superior court's jurisdiction or authority to enter the challenged order is one of law, we proceed to consider whether petitioner has shown entitlement to relief.

## A. *The Trial Court Had Jurisdiction to Act*

At the threshold, petitioner contends respondent lacked jurisdiction to enter the challenged order because the case had already become subject to the appellate jurisdiction of this court. We have exclusive appellate jurisdiction "when judgment of death has been pronounced" (Cal. Const., art. VI, § 11), and the trial court lacks power to interfere with such appellate jurisdiction. (*In re Carpenter* (1995) 9 Cal.4th 634, 646 [38 Cal.Rptr.2d 665, 889 P.2d 985]; *People* v. *Johnson* (1992) 3 Cal.4th 1183, 1257 [14 Cal.Rptr.2d 702, 842 P.2d 1].) "The purpose of the rule depriving the trial court of jurisdiction in a case during a pending appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment . . . by conducting other proceedings that may affect it." (*Betz* v. *Pankow* (1993) 16 Cal.App.4th 931, 938 [20 Cal.Rptr.2d 841].)

Our acquisition of appellate jurisdiction does not, however, divest the trial court of all power to act. Section 916, subdivision (a) (hereafter section 916(a)) specifically addresses this question; it provides, with exceptions not relevant here, that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, *but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order.*" (Italics added.) Thus,

during the pendency of an appeal (including, we assume, an appeal in a capital case), the trial court "retains certain powers over the parties and incidental aspects of the cause . . . ." (*People* v. *Johnson, supra,* 3 Cal.4th at p. 1257.)

The trial court here issued the no-contact order while presiding over proceedings to correct the record. Petitioner and the Attorney General differ on whether the order falls within the exception for "other matter[s] embraced in the action and not affected by the judgment," as that phrase is used in section 916(a). As we explain, the Attorney General has the better argument.

Petitioner argues the rule in *People* v. *Johnson, supra,* 3 Cal.4th at page 1258, definitively establishes respondent lacked jurisdiction to enter the order, barring as it does a trial court's entry of any order "unconnected with any criminal proceeding then pending before it." *Johnson,* however, merely held the process of record correction is not a "criminal proceeding" sufficient to support orders relating to *discovery.* (*Ibid.*) In resolving the discovery issue in *Johnson,* we did not purport to override section 916(a)'s language that, despite a pending appeal, a trial court could "proceed upon any other matter embraced in the action and not affected by the judgment or order."

Petitioner also suggests the trial court lacked jurisdiction because the no-contact order interferes with his ability to conduct an adequate habeas corpus investigation. In support of this argument, he cites the Supreme Court Policies Regarding Cases Arising From Judgments of Death, policy 3, standard 2-2, which provides that "[h]abeas corpus counsel should expeditiously investigate potentially meritorious bases for filing a petition for a writ of habeas corpus." Although we recognize counsel's obligation to investigate the potential grounds for collateral relief, counsel must conduct the investigation within the confines of the law, and section 916(a) permits trial courts to enter orders on "any . . . matter embraced in the action and not affected by the judgment or order."

The Attorney General argues that, despite the exclusive nature of our appellate jurisdiction, the trial court can enter any order that is "collateral or supplemental to the questions involved on the appeal" (*People* v. *Schulz* (1992) 5 Cal.App.4th 563, 570 [7 Cal.Rptr.2d 269]), as long as it is "connected with the criminal proceeding before [the trial court]." To the extent he is arguing the trial court had jurisdiction to enter an order regarding "other matter[s] embraced in the action and not affected by the judgment," as that phrase is used in section 916(a), we agree. Assuming the no-contact order is otherwise supportable, we fail to see how that order could interfere with this court's appellate jurisdiction.

Section 206, moreover, presupposes the trial court will retain jurisdiction to resolve issues concerning an attorney's postverdict contact with jurors. That section, discussed in more detail, *post*, requires the trial court be informed of "unreasonable contact with a juror" (§ 206, subd. (c)), and authorizes the trial court to impose monetary sanctions on any party or attorney who makes such unreasonable contact (§ 206, subd. (d)). The section thus presumes the trial court retains jurisdiction to act to protect jurors from harassment or other unwanted contact despite the court's having already received the verdict and discharged the jury.

In sum, both sections 916(a) and 206 establish that respondent possessed jurisdiction to enter the no-contact order.

B. *The Trial Court Has Inherent Power to Protect Jurors*

■ In the last decade, the Legislature has enacted new statutes, and amended existing ones, to protect the safety and privacy of jurors. Thus, in 1988, the Legislature enacted section 206 to require juror consent before the parties may contact a juror after trial. Then, in 1992, the Legislature enacted section 237 to govern disclosure of juror identifying information. Most recently, the Legislature amended both sections to ensure greater juror privacy. Prior to 1988, however, trial courts were not powerless to protect jurors. Despite the absence of any affirmative statutory power, trial courts exercised their inherent powers to ensure jurors were protected, following their discharge from a trial, from threats to their physical safety and invasions of their personal privacy. Such inherent judicial power did not disappear as a result of the Legislature's action in this area. Rather, trial courts retain inherent power to protect both juror safety and juror privacy.

These twin concerns of juror safety and juror privacy are prompted by varying circumstances. Sometimes a criminal defendant, or someone close to him, seeks to retaliate against a juror for an adverse verdict. (Compare *Wooddall* v. *Superior Court* (1986) 185 Cal.App.3d 399 [229 Cal.Rptr. 737] [defendant's threat to jurors following return of guilty verdict against his brother held not a violation of Penal Code section 95 (attempting to influence a juror)] with Penal Code section 95.1, enacted the following year (Stats. 1987, ch. 762, § 1, p. 2418) [threatening a juror after verdict rendered punishable by up to three years in prison].) More often, the losing party to a lawsuit or criminal prosecution will initiate posttrial contact with the jurors to discuss the case, in an effort to discover whether any juror committed misconduct. (See, e.g., *In re Hamilton* (1999) 20 Cal.4th 273 [84 Cal.Rptr.2d 403, 975 P.2d 600].) If the defendant or the defendant's attorney does not know the names and addresses of the jurors, counsel may, as here, ask the trial court to disclose the jurors' personal identifying information.

We recently observed that "strong public policies protect discharged jurors from improperly intrusive conduct in all cases." (*In re Hamilton,* *supra,* 20 Cal.4th at p. 304, fn. 24, mod. 20 Cal.4th 1083a; see also *Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 575-578 [224 Cal.Rptr. 664, 715 P.2d 624] (conc. opn. of Mosk, J.).) The uncontrolled invasion of juror privacy following completion of service on a jury is, moreover, a substantial threat to the administration of justice. (See *Linhart* v. *Nelson* (1976) 18 Cal.3d 641, 644 [134 Cal.Rptr. 813, 557 P.2d 104] ["once aware that after sitting though a lengthy trial [the juror] himself may be placed on trial, only the most courageous prospective juror will not seek excuse from service"]; *People* v. *Granish* (1996) 41 Cal.App.4th 1117, 1126 [49 Cal.Rptr.2d 45] ["If jurors were . . . routinely subjected to posttrial interrogation, many, if not most, would avoid service."]; see also *United States* v. *Chavis* (5th Cir. 1985) 772 F.2d 100, 110 [postverdict examination of jurors in federal court an "extraordinary step" requiring "a preliminary showing of misconduct"]; *United States* v. *Moten* (2d Cir. 1978) 582 F.2d 654, 664-667, and cases cited [district court judge has inherent power to restrict access to jurors after verdict]; cf. *United States* v. *Davila* (5th Cir. 1983) 704 F.2d 749, 753-754 [applying local rule to same effect].) These concerns, however, must be balanced with the equally weighty public policy that criminal defendants are entitled to jury verdicts untainted by prejudicial juror misconduct. (*People* v. *Atkins* (1988) 203 Cal.App.3d 15, 27 [249 Cal.Rptr. 863]; see also *In re* *Hitchings* (1993) 6 Cal.4th 97 [24 Cal.Rptr.2d 74, 860 P.2d 466] [judgment reversed for prejudicial juror misconduct].)

We discussed the proper balance between these concerns in *People* v. *Cox* (1991) 53 Cal.3d 618 [280 Cal.Rptr. 692, 809 P.2d 351], a case tried before the 1988 enactment of section 206. In *Cox,* a capital case, the trial court informed the jurors following completion of the penalty phase of the trial that they were free to speak with defense attorneys, then or later, if they wished. Some days later, the prosecutor represented to the trial court that a juror had "express[ed] some anxiety at having been contacted by a defense investigator, who had her home address," and had related that two other jurors had had similar experiences. (53 Cal.3d at p. 692.) Responding to these complaints, the trial court ordered all further communications with the jurors to take place through the court clerk.

We affirmed the trial court's ruling, reasoning that "[a] criminal defendant has neither a guaranty of posttrial access to jurors nor a right to question them about their guilt or penalty verdict." (*People* v. *Cox, supra,* 53 Cal.3d at pp. 698-699.) Although in *Cox,* as here, no statutory scheme authorized the trial court's limitation on juror access, we found the trial court had the inherent power to impose the limitation, explaining that "[a] trial court has

inherent as well as statutory discretion to control the proceedings to ensure the efficacious administration of justice" (*id.* at p. 700) and that, in exercising such discretion, the trial court may deny to the losing party in a legal proceeding "unqualified access to the jury after the conclusion of the trial" (*ibid.*).

In *People* v. *Rhodes* (1989) 212 Cal.App.3d 541 [261 Cal.Rptr. 1] (*Rhodes*), another case arising before the 1988 enactment of section 206, the appellate court applied an express balancing test to conclude the trial court, in denying a defendant's request for disclosure of juror identifying information, did not abuse its inherent authority. In *Rhodes*, the defendant, following his conviction of manslaughter, filed a motion for a new trial, claiming juror misconduct. In an affidavit, defense counsel stated his investigator had contacted two of the trial jurors, one of whom had made statements possibly suggestive of misconduct. Accordingly, defense counsel requested the trial court to disclose the name, address and telephone number of the jury foreman to permit an investigation to determine whether grounds existed for a new trial motion. The trial court denied the request and ultimately denied the new trial motion, as well. (212 Cal.App.3d at pp. 546-547.)

On appeal, the defendant contended that the "denial of his request for juror names, addresses and phone numbers . . . precluded counsel from effectively representing [him] at the [hearing on the] motion for new trial." (*Rhodes, supra,* 212 Cal.App.3d at pp. 547-548.) In evaluating the defendant's claim, the *Rhodes* court discerned several policy-based reasons to deny the defendant's request for disclosure of juror identifying information. These reasons included protecting a juror's state constitutional right to privacy; the possible deterrence of prospective jurors from fulfilling their obligation to serve if they knew they would be subject to postverdict intrusions into their lives; reducing incentives for jury tampering; promoting free and open discussion among jurors in deliberations; and protecting the finality of verdicts. (*Id.* at pp. 548-549.)

The *Rhodes* court acknowledged, on the other hand, the strong competing public interest in ascertaining the truth in judicial proceedings, including jury deliberations. (212 Cal.App.3d at p. 549.) The court found "an appropriate middle ground which can harmonize and satisfy [these] competing societal interests" by recognizing a rule that, "upon timely motion, counsel for a convicted defendant is entitled to the list of jurors who served in the case, including addresses and telephone numbers, if the defendant sets forth a sufficient showing to support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through other means, and that further investigation is necessary to provide the court with

adequate information to rule on a motion for new trial. . . . [¶] Absent a satisfactory, preliminary showing of possible juror misconduct, the strong public interests in the integrity of our jury system and a juror's right to privacy outweigh the countervailing public interest served by disclosure of the juror information as a matter of right in each case." (*Id.* at pp. 551-552.)

No applicable statutory law having been in effect at the time, the *Rhodes* court, in upholding the trial court's ruling, must necessarily have been relying on the inherent power of the judiciary to protect the safety and privacy of jurors. Significantly, we cited *Rhodes* with approval in a recent opinion finding the trial court did not abuse its discretion in denying a motion to compel disclosure of juror identifying information. (*People* v. *Jones* (1998) 17 Cal.4th 279, 317 [70 Cal.Rptr.2d 793, 949 P.2d 890].)

Petitioner contends *Rhodes* is inapplicable because that case addressed the issue of the disclosure of juror names and addresses, whereas he raises a different claim: he is challenging respondent's order prohibiting his counsel from contacting the jurors without first obtaining authorization from the court. This argument ignores *People* v. *Cox, supra,* 53 Cal.3d at page 700, where we expressly approved, as within the trial court's inherent discretion, a scheme by which the court clerk would serve as gatekeeper so as to protect the jurors from unwanted intrusion. In short, we conclude respondent possessed the inherent judicial power to limit the parties' ability to contact jurors following completion of the trial.[3]

C. *Subsequent Statutory Enactments Did Not Abrogate the Trial Court's Inherent Power to Protect Jurors*

As noted, *ante,* respondent issued the challenged no-contact order without articulating the source of its assumed authority. Although we conclude the trial court possessed the inherent judicial power to limit or condition post-trial juror contact, a question arises whether the statutes in effect at the time

---

[3]We recognize *Rhodes* anticipated that questions of juror contact and disclosure of juror identifying information may sometimes implicate different concerns. Thus, *Rhodes's* requirement that a defendant seeking disclosure of juror names, addresses and telephone numbers demonstrate he has made "diligent efforts . . . *to contact the jurors through other means*" (*Rhodes, supra,* 212 Cal.App.3d at p. 552, italics added) suggests that, at least in some cases, defense counsel will have an alternative way to contact jurors. This is consistent with the statement at oral argument by counsel for real party that the trial court's order in this case prevented only such juror contact as is made possible through reliance on the juror identifying information contained in the juror questionnaires made part of the record pursuant to California Rules of Court, rule 39.51(a)(1). Real party in interest's counsel averred that juror contact was otherwise permissible under the trial court's order, if defense counsel discovered juror names and addresses through some means other than the juror questionnaires. That respondent's order is susceptible to this interpretation is not clear from the record; in the event of a dispute, the parties are directed to return to the trial court for clarification.

of the court's order limited its inherent power. As we explain, nothing in the statutory scheme is inconsistent with the existence and exercise of the trial court's inherent power to safeguard juror safety and privacy.

### 1. Section 206, subdivisions (a)-(d)

Section 206, first enacted in 1988, provides that "[p]rior to discharging the jury from the case, the judge in a criminal action shall inform the jurors that they have an absolute right to discuss or not to discuss the deliberation or verdict with anyone." (§ 206, subd. (a); see Stats. 1988, ch. 1245, § 2, p. 4145.) Thus, jurors have "an absolute right" either to speak to defense counsel, the prosecutor, or the respective representatives of either party, or to decline to do so. Section 206, subdivision (a) establishes that the decision whether or not to discuss a completed case resides with each individual juror, and a trial court's statutory obligations concerning juror contact are initially discharged by informing the jurors of their rights, under section 206, to discuss or not to discuss the case with representatives from either side of a completed criminal trial.

After the trial court has admonished the jurors, pursuant to section 206, subdivision (a), of their rights, subdivisions (c) and (d) authorize the court to intervene to protect juror privacy. Subdivision (c) provides that "[a]ny unreasonable contact with a juror by the defendant, or his or her attorney or representative, or by the prosecutor, or his or her representative, without the juror's consent shall be immediately reported to the trial judge"; pursuant to subdivision (d), the trial court may impose monetary penalties on the offending party.

In sum, pursuant to section 206, subdivisions (a) through (d), jurors are free to speak with counsel or their representatives, if they wish, but they also can protect themselves from invasions of their privacy (or threats of retaliation from the losing side of a lawsuit) by withholding their consent to discuss the case and, if appropriate, by registering a complaint with the trial court.

Nothing in section 206 is inconsistent with the trial court's exercise of its inherent power in this case. Section 206 establishes one method of protecting jurors from unwanted contact by the losing party after trial, but does not purport to establish the exclusive method. Indeed, because section 206 makes clear that jurors must consent to any posttrial contact with attorneys or their representatives, the trial court's decision in this case to act as gatekeeper is consistent with section 206, in that it enables the court to determine ahead of time from the jurors whether or not any wishes to speak

to appellate counsel. If a juror refuses to consent and so informs the trial court, certainly counsel has no legitimate claim under section 206 that her ability to investigate potential claims for habeas corpus was undermined unfairly.[4]

### 2. *Section 237*

Section 237, originally enacted in 1992 and amended three times since then, now provides that the names, addresses and telephone numbers of jurors shall be sealed automatically following completion of a criminal trial. (§ 237, subd. (a)(2).) As previously indicated, however, section 237, subdivision (a)(2) is inapplicable to this case, in that petitioner's verdict was returned before its effective date of January 1, 1996. (§ 237, subd. (a)(4); Stats. 1996, ch. 636, § 2.) Nevertheless, we find the Legislature's stated intent is congruent with our decision today. In amending section 237 in 1995, the Legislature declared: "The Legislature finds and declares that jurors who have served on a criminal case to its conclusion have dutifully completed their civic duty. It is the intent of the Legislature in enacting this act to balance the interests of providing access to records of juror identifying information for a particular, identifiable purpose against the interests in protecting the jurors' privacy, safety, and well-being, as well as the interest in maintaining public confidence and willingness to participate in the jury system." (Stats. 1995, ch. 964, § 1, quoted in Historical and Statutory Notes, 13 West's Ann. Code Civ. Proc. (1999 pocket supp.) foll. § 206, p. 150.) The trial court's exercise of its inherent power to protect the jurors in this case is fully consistent with this statement of legislative intent.

### D. *The Trial Court Did Not Abuse Its Discretion*

Finding the trial court possessed the power to restrict appellate counsel's ability to contact the jurors in this case is not the end of our inquiry. We must still decide whether respondent abused its discretion in ordering appellate counsel to have no contact with the jurors without first showing "good cause" or "probable cause" for such contact and receiving court approval. In the circumstances of this trial we conclude the trial court acted within its discretion.

---

[4]Because we find the exercise of the trial court's inherent power to protect the safety and privacy of jurors, as exemplified by *Rhodes, supra,* 212 Cal.App.3d 541, is not inconsistent with the court's statutory power under section 206, we disapprove any contrary suggestion in *People* v. *Simms* (1994) 24 Cal.App.4th 462, 467-469 [29 Cal.Rptr.2d 436]. (See *People* v. *Jefflo* (1998) 63 Cal.App.4th 1314, 1321-1322, fn. 8 [74 Cal.Rptr.2d 622].)

To begin with, this was a capital trial, and defendant was found guilty and sentenced to suffer the death penalty. Further, it appears[5] that defendant was convicted of murdering one victim because she was a witness to a previous crime (Pen. Code, § 190.2, subd. (a)(10) [witness-killing special circumstance]), and that he was also convicted of attempting to prevent or dissuade a witness. Each of these circumstances raises serious concerns about juror safety. The physical safety of jurors is of paramount concern for the judiciary. (See, e.g., § 237, subd. (b) [a "compelling interest" justifying nondisclosure of juror identifying information "includes . . . protecting jurors from threats or danger of physical harm"].)

In addition, several years—almost a decade—have now passed since the jury returned its verdict. This long period of repose will have heightened the jurors' sense of privacy regarding Townsel's trial, likely making any present contact by appellate counsel both startling and more intrusive. Respondent court appeared concerned for the jurors' privacy, expressing the view that they not be disturbed. For respondent to ensure that any attorney contact with the jurors, so long after their discharge from jury service, is both fully consensual and conducted with proper solicitude for their privacy is not unreasonable.[6]

Under these circumstances, respondent did not abuse its discretion in requiring that appellate counsel approach jurors through the court. In this way, the court can act as a neutral third party, serving to apprise the jurors of counsel's interest and to determine, in the first instance, if a juror will consent to an interview with appellate counsel. If any juror refuses to consent, that is the end of the matter. If, however, a juror consents to an interview, no more need be shown, as section 206, subdivision (a) provides that jurors enjoy "an absolute right to discuss . . . the deliberation or verdict with anyone." If a juror does consent to an interview, respondent court would abuse its discretion by requiring counsel to make a showing of need or "good cause" greater than the desire to interview the juror for a lawful purpose. (Cf. § 206, subd. (f) [defense counsel may petition for disclosure of juror identifying information if necessary for "any . . . lawful purpose"].) In

---

[5]Because this dispute comes to us before the record on appeal has been certified, we cannot yet confirm the details of defendant's crime. We take these facts from exhibit 1, attached to the Attorney General's brief in opposition to the petition for writ of prohibition, etc.

[6]We recently addressed the issue of contacting jurors in capital cases long after the trial was over, explaining that when contacting a juror, appellate counsel and their representatives should "clearly identify the specific party they represent" and remind the juror at the outset of the interview that they have a statutory right to refuse an interview. (*In re Hamilton, supra,* 20 Cal.4th at p. 304, fn. 24.)

this circumstance, investigating the possibility of juror misconduct for presentation in a petition for writ of habeas corpus is a lawful purpose.[7]

In sum, respondent court did not abuse its discretion by acting as a neutral intermediary to ensure any posttrial juror contact was consensual and reasonable.

### DISPOSITION

The alternative writ of mandate is discharged, and the petition is denied.

George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J.** Concurring.—I agree with the result. But unlike the majority, I believe the question is governed by Code of Civil Procedure section 206. The majority reach their conclusion as if enacting section 206 had no effect on the court's powers. Moreover, they omit from their discussion subdivision (b) of section 206. I would take a different approach.

### FACTS

It appears from the record before us that in People v. Townsel (Super. Ct. Madera County, judgment of death entered Sept. 13, 1991 (No. 8926), review pending (S022998)), a jury convicted Anthony Letrice Townsel of murdering Mauricio Martínez, Jr., and Martha Díaz, and found two special circumstances to be true: that he committed multiple murder, and that he murdered Díaz because she was a witness. Apparently the jury also found true an allegation that Díaz was pregnant, and found Townsel guilty of "attempting to prevent and dissuade a witness"—i.e., attempted coercion of a witness.

During record preparation hearings the court agreed to make available to defense counsel the jurors' names, addresses, and phone numbers. But it also "ordered [that] there's to be no jury contact without prior court approval. In other words, if you do come upon a juror questionnaire that you do want to contact that person, then you'll have to petition the Court, giving forth your reasons before that would be granted." It later stated that it would not permit posttrial juror contact unless Townsel could show "some probable cause" or "good cause" for it. The court forbade a "fishing expedition" in conjunction with counsel's possible desire to prepare a petition for writ of habeas corpus,

---

[7]Of course, for verdicts returned after January 1, 1996, the requirements of section 237 would apply. (See § 237, subd. (b) [showing of "good cause" necessary for disclosure of juror identifying information].)

indicating that it would require a specific reason before counsel could contact former jurors. It gave no statutory basis for its ruling.

DISCUSSION

I understand the trial court to have issued two commands to Townsel's counsel: first, to proceed only through the court in attempting to contact former jurors, and second, to contact the former jurors only if counsel persuaded the court that there was a valid reason to do so. I examine the validity of each requirement in turn.

Whatever powers "the long-standing common-law rule against inquiring into jurors' motives to impeach their verdict" (*State* v. *Marshall* (1997) 148 N.J. 89, 280 [690 A.2d 1, 96]) may have conferred on trial courts (see also *Koo* v. *State* (Ind.Ct.App. 1994) 640 N.E.2d 95, 104-105), the Legislature qualified our courts' authority when it enacted section 206, which governs this case. (All statutory references are to the Code of Civil Procedure.)

Section 206 provides:

"(a) Prior to discharging the jury from the case, the judge in a criminal action shall inform the jurors that they have an absolute right to discuss or not to discuss the deliberation or verdict with anyone. The judge shall also inform the jurors of the provisions set forth in subdivisions (b), (c), and (d).

"(b) Following the discharge of the jury in a criminal case, the defendant, or his or her attorney or representative, or the prosecutor, or his or her representative, may discuss the jury deliberation or verdict with a member of the jury, provided that the juror consents to the discussion and that the discussion takes place at a reasonable time and place.

"(c) Any unreasonable contact with a juror by the defendant, or his or her attorney or representative, or by the prosecutor, or his or her representative, without the juror's consent shall be immediately reported to the trial judge.

"(d) Any violation of this section shall be considered a violation of a lawful court order and shall be subject to reasonable monetary sanctions in accordance with Section 177.5 of the Code of Civil Procedure."[1]

I have not found California cases on point, but there does not seem to be a doubt that the court's power to control the proceedings under subdivision

---

[1]Section 206 also contains subdivisions (e) and (f). They provide: "(e) Nothing in the section shall prohibit a peace officer from investigating an allegation of criminal conduct. [¶] (f) Pursuant to Section 237, a defendant or defendant's counsel may, following the recording of a jury's verdict in a criminal proceeding, petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate

(a) of section 916 permitted it, consistent with section 206, to order counsel to proceed only through its intermediation. (Cf. *United States* v. *Moten* (2d Cir. 1978) 582 F.2d 654, 665 ["It is well established in this Circuit that in order to insure that jurors are protected from harassment, a district judge has the power, and sometimes the duty, to order that all post-trial investigation of jurors shall be under his supervision"]; *United States* v. *Brasco* (2d Cir. 1975) 516 F.2d 816, 819, fn. 4 [" 'post-trial questioning of jurors must only be conducted under the strict supervision and control of the court' "] [dictum].)

That the jurors have a right to speak about the trial (§ 206, subd. (a)), and that a defendant or counsel has a right to discuss the jury's activities with a former juror (*id.*, subd. (b)), does not confer on defense counsel a right to contact them in whatever manner it pleases, even if the manner is reasonable. The former juror must consent to be contacted. The court may first ascertain, if a proper basis for doing so presents itself, whether the former juror wishes to be contacted before any contact may occur.

In sum, the court's order did not implicate subdivision (a) of section 206 at all. Contrary to any conclusion that may be inferred from the majority opinion, the order did implicate the right conferred in subdivision (b), but it did not infringe that right. That right is premised on a juror's consent to be contacted, and the court may prescribe the means of obtaining it, as happened here. (Accord, *People* v. *Cox* (1991) 53 Cal.3d 618, 700 [280 Cal.Rptr. 692, 809 P.2d 351] ["the court did not overstep its authority in directing that all further communication would be through the court clerk"].) By contrast, given a defendant's right to speak with former jurors if, but only if, the latter agree, the court would abuse its discretion if it were unwilling to contact former jurors and ask if they are willing to speak with counsel.

The court's order requiring Townsel's counsel to approach former jurors only through the court thus comported with the statutes governing this case. And it comported with public policy, as legislatively expressed. In sections 206 and 237 the Legislature showed its intent that the jurors be left alone after the trial unless there is good cause to disturb them. It so stated in a preamble to an amendment to section 206. "The Legislature finds and declares that jurors who have served on a criminal case to its conclusion have dutifully completed their civic duty. It is the intent of the Legislature in

---

with jurors for the purpose of developing a motion for new trial or any other lawful purpose. This information consists of jurors' names, addresses, and telephone numbers. The court shall consider all requests for personal juror identifying information pursuant to Section 237." Section 237 contains a comprehensive scheme for processing such requests, but the majority correctly concludes that it applies only to verdicts rendered after January 1, 1996. (See *id.*, subd. (a)(4).)

enacting this act to balance the interests of providing access to records of juror identifying information [and implicitly access to former jurors themselves] for a particular, identifiable purpose against the interests in protecting the jurors' *privacy*, safety, and well-being, as well as the interest in maintaining public confidence and willingness to participate in the jury system." (Stats. 1995, ch. 964, § 1, italics added.)

The appellate courts have made similar observations. "[T]he very real danger that citizens will be unwilling to serve on juries if their privacy is not respected" is "a substantial threat to the administration of justice." (*Contra Costa Newspapers, Inc.* v. *Superior Court* (1998) 61 Cal.App.4th 862, 867 [72 Cal.Rptr.2d 69] (*per curiam*).) In *People* v. *Rhodes* (1989) 212 Cal.App.3d 541 [261 Cal.Rptr. 1], where an issue was disclosure of juror names, addresses, and telephone numbers, the court recognized that the courts must strike a balance between the " 'strong public interest in the ascertainment of the truth in judicial proceedings, including jury deliberations' " (212 Cal.App.3d at p. 549) and jurors' privacy. "Our jury system . . . depends upon adherence to the public policy which discourages harassment of jurors by losing parties seeking to have the verdict set aside." (*Id.* at p. 548.)

We are barely acquainted with this case's facts. The trial court, by contrast, is well acquainted with them. It may reasonably have concluded that the circumstances surrounding the trial were too dangerous to require the jurors to fend off entreaties by themselves. It may have had good reason to require counsel to obtain its permission before contacting the jurors, who, for all we know, may have found their service on the jury terrifying, and might reasonably be expected to harbor strong fears afterward about the potential for harm.

I next turn to the other portion of the court's ruling: the requirement that Townsel show a valid reason before counsel would be allowed to talk with former jurors.

As stated, subdivision (b) of section 206 provides that a criminal defendant or his or her counsel "may discuss the . . . verdict with a [former juror]." It contains no requirement of a valid reason. I believe the court erred in saying that counsel would have to have a specific reason beyond the desire to develop issues in a petition for writ of habeas corpus before the court would permit contact with the former jurors. A convicted criminal defendant may properly ask to contact former jurors if he or she tells the court that he or she wishes to discuss the case with them to glean information that might be useful in a new trial motion, an appeal, or a petition for writ of habeas corpus.

The relief sought, however, exceeds the scope of the court's error. Townsel seeks a writ restraining the court from enforcing at all its no-contact order. Thus I agree with the majority's disposition.

Kennard, J., concurred.