Filed 6/8/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD LUCIO DEHOYOS, | G056178 |
| Petitioner, | (Super. Ct. No. C77640) |
| v. | O P I N I O N |
| THE SUPERIOR COURT OF ORANGE COUNTY, | |
| Respondent; | |
| THE PEOPLE OF THE STATE OF CALIFORNIA, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Kimberly Menninger, Judge.  Petition granted.

Hilary Potashner, Federal Public Defender, Susel Carrillo-Orellana and Andrea Yamsuan, Deputy Federal Public Defenders, for Petitioner.

Xavier Becerra, Attorney General, Ronald S. Matthias, Assistant Attorney General, Holly D. Wilkens and Scott C. Taylor, Deputy Attorneys General, for Real Party in Interest.

\*　　　\*　　　\*

In 1993, Richard Lucio DeHoyos was convicted by a jury of kidnapping, raping and murdering a nine year old girl. He was sentenced to death.

In April 2018, DeHoyos petitioned this court for a writ of mandate after the trial court denied his motion for an order permitting his federal habeas counsel to contact jurors who had served on his trial jury. We summarily denied his petition, but the Supreme Court granted review and transferred the case back to us with directions to issue an alternative writ directing the trial court to either vacate its order and issue a new order granting relief with respect to three jurors DeHoyos identified as having previously discussed the case with his investigators, or to show cause before this court. In its order, the Supreme Court cited *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1097 (*Townsel*).

The trial court refused to vacate its order denying the motion and, having considered the arguments made by the Attorney General in support of the court's refusal, we now grant the petition and issue a writ of mandate ordering the trial court to vacate its order and to schedule a hearing to establish a reasonable procedure to facilitate contact with the three jurors to ascertain their current willingness to speak with DeHoyos's counsel. As explained in *Townsel*, if any of those jurors consent to speak with counsel, the trial court may not prohibit it. If any juror declines contact, the issue with respect to that juror will be resolved.

**FACTS**

After a jury convicted him at his second trial in 1993, DeHoyos was sentenced to death.[1] In the wake of his conviction, DeHoyos moved for a new trial, arguing (among other things) that the prosecutor had committed misconduct by sending a letter to the jurors suggesting they not speak with any representative of the defense unless a representative of the prosecution was also present. At least one juror submitted a declaration in connection with the new trial motion, explaining she had not been misled by the prosecutor's letter; her letter also disclosed she and other jurors had spoken with both the defense and the prosecution after the penalty verdict was rendered.

In 1999, after counsel was appointed to represent DeHoyos in his automatic appeal to the Supreme Court, DeHoyos filed a motion to correct and augment the record on appeal. In response, the Attorney General asked the trial court to issue a jury protective order in order to "protect the privacy of all jurors in the instant matter." Specifically, the Attorney General requested the court to redact all juror personal information, such as names, addresses, and telephone numbers from any discovery order related to jurors, and to require a showing of good cause for the release of that information. Further, citing *Townsel* for the proposition that "[t]rial courts have the inherent power and discretion to act as gatekeepers, ensuring any juror contact . . . is consensual and reasonable," the Attorney General asked that DeHoyos be required to seek court approval before contacting any juror and to be prohibited from any non-consensual or unreasonable contact.

In November 2000, the trial court granted the requested restraining order in part. The court specifically *allowed* the parties to have access to the juror personal information. The court ordered that "[a]s part of the record on appeal, the parties will be

---

[1] DeHoyos was also convicted at his first trial in 1991, but the court ordered a new trial based on evidence of juror misconduct.

provided with certain information pertaining to potential and seated jurors, namely the 'Juror Background/Voir Dire Report' (hereafter voir dire report), the juror questionnaires, and medical reports relating to prospective jurors who were excused for medical reasons (hereafter medical reports.)"  However, the court ruled that "[a]ll such information relating to the jurors (seated or potential), except for their names (which are already part of the record on appeal) is deemed confidential and can be disclosed only for purposes of and in connection with the above-referenced matter and related habeas corpus proceedings."  The court prohibited the disclosure of juror addresses to DeHoyos himself, and ordered counsel not to leave the juror medical reports, voir dire report or juror questionnaires in DeHoyos's possession.

At the same time, the court granted the Attorney General's request for an order prohibiting contact with jurors without court approval.  The order states "No contact, or attempted contact, shall be made with any juror (seated or potential) by counsel of record for the parties, including co-counsel and associate counsel, habeas counsel, or employees, agents, or representatives of counsel or habeas counsel, unless pursuant to an order of the court."

The no-contact order in this case is similar to the order in *Townsel*, which had been decided a year earlier.  In *Townsel*, the court ordered that "'there's to be no jury contact without prior court approval.  In other words, if you do come upon a juror questionnaire that you do want to contact that person, then you'll have to petition the Court, giving forth your reasons before that would be granted.'"  (*Townsel, supra*, 20 Cal.4th at p. 1088.)  The court later clarified that the "petitioner's counsel must show 'good cause' or 'probable cause' before the court would allow her to contact the jurors." (*Ibid*.)

Although the order in this case did not specify "good cause" as a condition precedent for juror contact, the trial court later interpreted the order as requiring such a showing.  In 2011, counsel appointed to represent DeHoyos in a state court petition for

4

habeas corpus filed a motion seeking permission to contact jurors on a "wide array of subjects." The court denied the motion, finding counsel's request to be a "fishing expedition" because the motion was not supported by a sufficient showing that any juror misconduct had occurred.

Referring to *Townsel,* the court explained, "I do think that the Supreme Court would expect the court not to disturb jurors after eighteen years unless there is some evidence of actual misconduct of some kind." The court also noted that "at this point I have to assume that they have not requested to be interviewed. You haven't produced any evidence that any jurors have agreed to do that. [¶] I think that the Supreme Court would expect the court to protect the jurors to that extent from the intrusive nature of having someone show up on their doorstep wanting to interview them about a trial they heard eighteen years before and had no contact with in the meantime."

However, the court stated its denial was without prejudice, telling DeHoyos's counsel that "[i]f you find that there were jurors who agreed to be interviewed and were not, I would consider then sending the letter that you have proposed today.[2] Because of the passage of time, I would want to give them another chance to rethink whether they are still willing to be interviewed. But I think you would be in a much stronger position there than you are now."

In December 2014, the Office of the Federal Public Defender was appointed to pursue a petition for habeas corpus in the federal district court. In October

---

[2] Earlier in the hearing, DeHoyos's counsel had addressed the possibility that the initial contact with the jurors might come in a letter from the court, rather than directly from counsel, while noting that would be "obviously not ideal for us." Counsel explained, "We believe that face-to-face contact creates an easier environment for the jurors to talk in person versus calling them or something like that, versus having them come into the court." But counsel acknowledged that "if that was the only thing that the court was willing to do, then we would be willing to have a letter come from you asking if they would like to speak or not to speak about their experience."

2016, five years after the court's denial of his last motion for permission to contact jurors, DeHoyos filed a motion requesting an order vacating the no contact order or granting permission for his federal habeas counsel to contact the jurors. The motion specified that counsel "seeks only the opportunity to contact jurors to ask whether they would be willing to speak about their service on the jury at DeHoyos's second trial. If a juror expresses that he or she does not wish to speak about their experiences, counsel will immediately end the discussion and will not attempt to contact the juror again." In the alternative, DeHoyos sought permission to contact the three jurors he identified who agreed to speak with his investigators back in 1993.

Although there was no opposition filed, the trial court denied the motion without a hearing. The court noted that "[i]t has been more than 20 years since the 1993 verdict in the present case." Citing *Townsel* repeatedly, the court explained that "[a] trial court has the 'inherent power to protect both juror safety and juror privacy.' [Citation.] 'A criminal defendant has neither a guaranty of posttrial access to jurors nor a right to question them about their guilt or penalty verdict.' [Citations.] '[S]trong public policies protect discharged jurors from improperly intrusive conduct' after their service has concluded."

The court acknowledged that "the policies protecting juror privacy 'must be balanced with the equally weighty public policy that criminal defendants are entitled to jury verdicts untainted by prejudicial juror misconduct,'" but reasoned that those competing interests could be harmonized by a rule that allows access to jurors only if the defendant "submits a timely motion which includes 'a sufficient showing to support a reasonable belief that jury misconduct occurred.' [Citing *Townsel*]." Concluding that DeHoyos had failed to make that "necessary preliminary showing" because "[t]he documents provided, including all exhibits, fail to support a reasonable belief that juror misconduct occurred," the court denied the motion.

The court also denied DeHoyos's alternative request to contact only the three jurors who had previously consented to be interviewed because the documents failed "to establish that any of the three specified jurors interviewed in 1993 after the verdict either (1) agreed to be interviewed but were not interviewed; or (2) consented to a subsequent interview or expressed willingness to be interviewed in the future."

In April 2018, DeHoyos challenged the court's denial of his motion by filing a petition for habeas corpus in this court, contending that the trial court abused its discretion by issuing the no-contact order in the first place, and also by denying his habeas counsel permission to contact the jurors under the terms of that order. In the alternative, DeHoyos argued the petition should be granted as to the three jurors who agreed to speak with his investigators in the wake of the 1993 trial. We summarily denied that petition.

DeHoyos then filed a petition for review in the Supreme Court. (*DeHoyos v. Superior Court*, review granted March 20, 2019, S253936.) The Supreme Court granted the petition for review and transferred the case back to us with directions to vacate our denial order and to issue an alternative writ directing the trial court to vacate its order and issue a new order granting relief with respect to the three identified jurors or to show cause before this court.

We complied with that directive and issued the alternative writ. The trial court declined to vacate its ruling; we set the matter for a hearing.

**DISCUSSION**

1. *Background Law*

Most issues concerning juror privacy involve either (1) the right to obtain the juror's personal identifying information, which is governed by Code of Civil

7

Procedure section 237,[3] or (2) the right to contact jurors, which is governed by section 206.

Since 1996, section 237 has required that jurors' personal information, including their names, addresses and telephone numbers, be sealed following the recording of a verdict, and that any petition for access to those records be supported by a showing of good cause. However, that provision applies only to cases in which the jury verdict was returned on or after January 1, 1996. (§ 237, subd. (a)(4).)

In this case, the court's no-contact order expressly confirmed that the jurors' names and other personal identifying information would be included in the record on appeal, and thus that DeHoyos and his counsel would have access to it—albeit with some restrictions. Consequently, that issue is not in dispute. The sole issue before us is whether the three identified jurors should be contacted for the purpose of determining whether they will consent to a more comprehensive interview by defense counsel.

That issue is governed by section 206, which has not significantly changed since this case was tried in 1993. Both then and now, section 206 has made clear that a defendant's right to discuss the case with any juror is conditioned on the juror's consent. The statute requires that jurors be informed, prior to their discharge, that they have the absolute right to discuss or not discuss their deliberation or verdict with anyone. (§ 206, subd. (a).) The statute also expressly provides that the defendant and his or her attorney are permitted to discuss the jury's deliberation with any juror as long as the juror consents and the discussion take place at a reasonable time and place. (§ 206, subd. (b).) Any unreasonable contact with a juror, without the juror's consent, must be immediately reported to the trial judge and is treated as the violation of a lawful court order. (§ 206, subds. (d) and (e); § 206, former subds. (c) and (d).)

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Effective in 2001, section 206 added a requirement that if a discussion about the deliberation or verdict occurs more than 24 hours after the verdict was returned, the defendant (or prosecutor) and any attorney or representative of either party, is required to inform the juror of the identity of the case, the name of the party he or she represents, the subject of the interview, the right of the juror to either discuss or not discuss the deliberations or verdict, and the juror's right to have a copy of any declaration filed with the court. (§ 206, subd. (c).)

In *Townsel,* the Supreme Court considered the propriety of a no-contact order in a case like this one. In *Townsel*, the petitioner's trial took place in 1991, and thus the unredacted juror questionnaires were included in the appellate record and there was consequently no dispute about counsel's access to the jurors' personal information. (*Townsel, supra,* 20 Cal.4th. at pp. 1087-1088.) However, on its own motion, the trial court in *Townsel* issued an order prohibiting any contact with jurors without prior court approval, and required that "petitioner's counsel must show 'good cause' or 'probable cause' before the court would allow her to contact the jurors." (*Id.* at p. 1088.)

The petitioner sought a writ of mandate in the Supreme Court, arguing the trial court had no authority to issue such an order, and that even if it did, the court had abused its discretion by doing so under the circumstances of that case. The Supreme Court denied relief, concluding that "notwithstanding the Legislature's enactment and expansion of statutory procedures governing attorney contact with jurors after a jury trial has ended, trial courts have always possessed the inherent power to protect jurors' physical safety and privacy. Nothing in the exercise of a court's inherent power in this respect is inconsistent with present statutory guarantees. Nor did respondent court, in entering the no-contact order in the present case, abuse its inherent discretion. Rather, respondent, in the exercise of its inherent power, *was merely acting as a gatekeeper to ensure that any juror contact by petitioner's counsel . . . is both consensual and reasonable.*" (*Townsel*, *supra*, 20 Cal.4th at p. 1087, italics added.)

9

The court began its analysis by confirming that even before the Legislature enacted sections 206 (in 1988) and 237 (in 1992), trial courts had "inherent powers to ensure jurors were protected, following their discharge from a trial, from threats to their physical safety and invasions of their personal privacy." (*Townsel*, *supra*, 20 Cal.4th at p. 1091.) The court acknowledged, however, that concerns for juror safety and privacy "must be balanced with the equally weighty public policy that criminal defendants are entitled to jury verdicts untainted by prejudicial juror misconduct." *(Id.* at p. 1092.) The court identified *People v. Cox* (1991) 53 Cal.3d 618 (*Cox*)[4] as a case in which the trial court had properly exercised its discretion to supervise the defendant's contact with jurors even before the 1988 enactment of section 206. In that case, the trial court's order— which the Supreme Court affirmed—required "all further communications with the jurors to take place through the court clerk" because several jurors had reported anxiety after being contacted by a defense investigator. (*Townsel,* at p. 1092; see *Cox,* at p. 692.) In *Townsel,* the court characterized the order in *Cox* as striking "the proper balance" between the policies of protecting jurors and ensuring verdicts untainted by misconduct. (*Townsel,* at p. 1092.)

The court also cited *People v. Rhodes* (1989) 212 Cal.App.3d 541—a case involving disclosure of juror identifying information—as "another case arising before the 1988 enactment of section 206, [in which] the appellate court applied an express balancing test to conclude the trial court, in denying a defendant's request for disclosure of juror identifying information, did not abuse its inherent authority." (*Townsel, supra*, 20 Cal.4th at p. 1093.) The court concluded *Rhodes* was significant because "[n]o applicable statutory law having been in effect at the time, the *Rhodes* court, in upholding

_____

[4] Disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, footnote 22.

10

the trial court's ruling, must necessarily have been relying on the inherent power of the judiciary to protect the safety and privacy of jurors." (*Townsel*, at p. 1094.)

The court next explained why the enactment of section 206 did not deprive the trial court of its inherent power to protect jurors, stating that "the trial court's decision in this case to act as gatekeeper is consistent with section 206, in that it enables the court to determine ahead of time from the jurors *whether or not* any wishes to speak to appellate counsel. If a juror refuses to consent and so informs the trial court, certainly counsel has no legitimate claim under section 206 that her ability to investigate potential claims for habeas corpus was undermined unfairly." (*Townsel, supra*, 20 Cal.4th at pp. 1095-1096, italics added.)

The court then stated that such a "gatekeeper" order was not an abuse of discretion under the circumstances of that case for several reasons. First, the case was a capital case and the defendant was sentenced the death. Second, the defendant was convicted of murdering a witness to a previous crime and attempting to dissuade a witness. The court stated that "[e]ach of these circumstances raises serious concerns about juror safety." (*Townsel*, *supra*, 20 Cal.4th at p. 1097.) Additionally, the court pointed to the long passage of time since the trial, reasoning that "[t]his long period of repose will have heightened the jurors' sense of privacy regarding Townsel's trial, likely making any present contact by appellate counsel both startling and more intrusive. Respondent court appeared concerned for the jurors' privacy, expressing the view that they not be disturbed. For respondent to ensure that any attorney contact with the jurors, so long after their discharge from jury service, is both fully consensual and conducted with proper solicitude for their privacy is not unreasonable." (*Ibid.*)

Finally, the court emphasized that the trial court's role as "gatekeeper" under the no-contact order meant only that "the court can *act as a neutral third party, serving to apprise the jurors of counsel's interest and to determine, in the first instance, if a juror will consent to an interview with appellate counsel*. If any juror refuses to

11

consent, that is the end of the matter. If, however, a juror consents to an interview, no more need be shown, as section 206, subdivision (a) provides that jurors enjoy 'an absolute right to discuss . . . the deliberation or verdict with anyone.'" (*Townsel*, *supra*, 20 Cal.4th at p. 1097.) However, "[i]f a juror does consent to an interview, respondent court would abuse its discretion by requiring counsel to make a showing of need or 'good cause' greater than the desire to interview the juror for a lawful purpose." (*Ibid*.)

2.      *The No-Contact Order in this Case*

The no-contact order in this case was sought by the Attorney General pursuant to *Townsel*, and expressly based on the trial courts' "inherent power and discretion to act as gatekeepers, ensuring any juror contact . . . is consensual and reasonable." Under *Townsel*, the issuance of such an order can be reasonably justified based on a significant passage of time since the trial, and the court's concern that any contact with the jurors might, as a consequence, be unduly startling and intrusive. Given that the period of time between the trial and the no-contact order in this case (nine years) is substantially longer than in *Townsel* (six years), we cannot say the trial court abused its discretion in issuing the order.

However, our analysis does not end there. In its "gatekeeper" role, the trial court's responsibility is to manage the initial contact with the jurors to ascertain consent to be interviewed, not to unilaterally prohibit all contact. (*Townsel*, *supra*, 20 Cal.4th at p. 1097.) Thus, unless the juror has already communicated an unwillingness to speak with the defendant's counsel, the court's role is "to determine ahead of time from the jurors *whether or not* any wishes to speak to appellate counsel." (*Townsel*, at pp. 1095-1096, italics added.)[5]

---

[5]      At oral argument, counsel argued that we should order defense access to additional jurors beyond the three referred to in the Supreme Court's order. We decline to do so because the only issue before us is as stated in the Supreme Court's order.

12

In denying the motion here, the trial court failed to do what *Townsel* required of it.  The court refused to allow any contact with the jurors—even those three who agreed to speak with DeHoyos's representatives in the past—indicating it was not convinced they had expressed a current willingness to be interviewed.  That justification begs the question rather than answers it.  The court's obligation as gatekeeper is to ask.

## DISPOSITION

The petition for writ of mandate is granted.  The trial court is directed to conduct a hearing to ascertain an appropriately neutral means of contacting the three jurors identified by DeHoyos, to inquire whether they consent to be interviewed by DeHoyos's representatives, and if so, under what conditions.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.