Filed 6/24/25

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B335987 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA069348) |
| v. | |
| JAMES WINSLOW DIXON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Reversed with directions.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, James William Bilderback II, Senior Assistant Attorney General, Dana Muhammad Ali, Supervising Deputy Attorney General, Kathy S. Pomerantz and

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part B(3) of the Discussion.

Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Death penalty appeals, which are automatic to the Supreme Court, can take years, even decades, to resolve, and a lot can happen during that time. Voters pass new initiatives, legislatures enact new and sometimes ameliorative legislation, governors institute and modify new policies. One of the things that happened while James Dixon's death penalty appeal was (and still is) pending is the Legislature enacted several statutes authorizing the superior court to recall the sentence of defendants serving prison terms that included certain sentence enhancements and to resentence those defendants. One of those statutes applies to Dixon. The issue here is whether he is entitled to relief in the superior court under that statute, even though his appeal from his conviction and sentence of death is still pending (and not yet fully briefed) in the Supreme Court. We will conclude he is.

In 2008 a jury found Dixon guilty of first degree murder and two rapes and found true special-circumstance allegations he committed the murder while engaged in robbery and kidnapping. On the murder conviction the trial court sentenced Dixon to death. On the rape convictions the court imposed and stayed execution of two consecutive terms of 25 years to life. The court also imposed and stayed execution of a one-year firearm

enhancement and four one-year prior prison term enhancements under Penal Code section 667.5, former subdivision (b).[1]

In 2023 the Department of Corrections and Rehabilitation advised the superior court that Dixon was eligible for recall and resentencing under section 1172.75. Without holding a hearing, the court permanently stayed execution of the prior prison term enhancements, but ruled Dixon was not eligible for resentencing because the trial court had stayed execution of Dixon's enhancements. Dixon argues he was eligible for a full resentencing. The People argue that the superior court had no jurisdiction to resentence Dixon because his automatic appeal is pending in the Supreme Court, that individuals serving a death sentence are not eligible for resentencing under section 1172.75, and that section 1172.75 does not apply to enhancements that were stayed.

In the published portion of this opinion we conclude that the superior court had jurisdiction to resentence Dixon and that the superior court may resentence him on the noncapital portions of his sentence but not on the death sentence. In the unpublished portion of this opinion, we conclude section 1172.75 applies to all enhancements imposed under section 667.5, former subdivision (b), whether executed or stayed. Therefore, we reverse and direct the superior court to strike the prior prison term enhancements and conduct a resentencing hearing on the non-death portions of Dixon's sentence.

---

[1]     Undesignated statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *A Jury Convicts Dixon of First Degree Murder and Rape, and the Trial Court Sentences Him*

In 2008 a jury convicted Dixon on one count of first degree murder (§ 187, subd. (a)) and found true the allegation Dixon personally used a deadly or dangerous weapon in committing the murder (§ 12022, subd. (b)(1)).  The jury also found true special-circumstance allegations the murder was committed while Dixon was engaged in, or was an accomplice in, the commission of robbery (§ 190.2, subd. (a)(17)(A)) and kidnapping (§ 190.2, subd. (a)(17)(B)).  The jury returned a verdict of death on the murder conviction.  The jury also convicted Dixon on two counts of rape (§ 261, subd. (a)(2)) (committed five years before the murder) and found true allegations he committed the rapes during the commission of a burglary, that he personally used a dangerous or deadly weapon or firearm, that there was more than one victim, and that he engaged in the tying or binding of the victims (§ 667.61, subds. (a), (e)).  The trial court found Dixon had served four prior prison terms, within the meaning of section 667.5, former subdivision (b).

The trial court sentenced Dixon to death on the murder conviction, plus one year for the firearm enhancement under section 12022, subdivision (b)(1).  On the rape convictions the court imposed two consecutive terms of 25 years to life.  The court also sentenced Dixon to a consecutive term of one year for each of the four prior prison term enhancements.  The court stayed execution of the sentences on the rape convictions and the enhancements, with the "stays to become permanent upon the execution of the sentence of death."  The court ordered that, if the

4

sentence of death were "reversed, modified, or reduced," the stays would be lifted, and Dixon would serve the sentences on the rape convictions and the enhancements "consecutively to any modified or reduced sentence."

Dixon's automatic appeal from the judgment of death has been pending in the Supreme Court since May 2008. Principal briefing was completed in 2015, and Dixon's supplemental opening brief is due in March 2026.

B.     *The Superior Court Finds Dixon Ineligible for Resentencing Under Section 1172.75*

In 2021 the Legislature declared legally invalid prior prison term enhancements imposed under section 667.5, former subdivision (b), before January 1, 2020, except those arising from convictions for sexually violent offenses. Senate Bill No. 483 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 728, § 3) added section 1172.75, which provided a procedure for recalling the sentence and resentencing inmates serving terms that included the now-invalid enhancements. (§ 1172.75, subd. (a).)

In 2023 the Department informed the superior court that Dixon was "potentially eligible for resentencing under" section 1172.75. Without holding a hearing the court issued an order stating Dixon was "not currently serving a sentence that includes a [section] 667.5 enhancement because that enhancement was stayed." The court ruled that Dixon was "ineligible for relief" under section 1172.75 and that the section "667.5 enhancement will be permanently stayed." Dixon timely appealed.

# DISCUSSION

A.   *Applicable Law*

   1.   *Statutory Construction*

"'Our primary task "in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent."'" (*People v. McCallum* (2020) 55 Cal.App.5th 202, 211.) "'"We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."'" (*People v. Brown* (2023) 14 Cal.5th 530, 536; see *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126.) "The proper interpretation of a statute is a question of law we review de novo." (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)

   2.   *Section 1172.75*

Before January 1, 2020 section 667.5, subdivision (b), required the court to impose a one-year enhancement for each prior prison term the defendant had served, unless the defendant had remained free of custody for the preceding five years.

6

(§ 667.5, former subd. (b); *People v. Garcia* (2024) 101 Cal.App.5th 848, 854.) Effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590, § 1) amended section 667.5 to limit the enhancement to prior prison terms for sexually violent offenses. (§ 667.5, subd. (b); *Garcia*, at p. 854.)[2] Courts applied the amendment to section 667.5 retroactively to cases not yet final on January 1, 2020. (*People v. Christianson* (2023) 97 Cal.App.5th 300, 309, review granted Feb. 21, 2024, S283189 (*Christianson*); see *People v. Jennings* (2019) 42 Cal.App.5th 664, 668.)

Effective January 1, 2022, Senate Bill No. 483 made the change retroactive to "all persons currently serving a term of incarceration in jail or prison for these repealed sentence enhancements." (Stats. 2021, ch. 728, § 1.) Senate Bill No. 483 added section 1171.1, later renumbered as section 1172.75, subdivision (a), which states: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (See *People v. Garcia, supra*, 101 Cal.App.5th at pp. 854-855.) Section 1172.75, subdivision (b), requires the Department to identify individuals serving terms that include no-longer-valid enhancements. After the superior court verifies a judgment includes an invalid enhancement, the court must "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).)

Section 1172.75, subdivision (d)(2), provides the court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial

---

[2] Dixon's four prior prison term enhancements were not for sexually violent offenses.

7

discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." "'By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly "invalid" enhancements.'" (*People v. Garcia*, *supra*, 101 Cal.App.5th at p. 855.) "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

> B. *The Superior Court Erred in Not Recalling Dixon's Sentence and Holding a Resentencing Hearing Under Section 1172.75*

>> 1. *The Superior Court Had Jurisdiction To Recall Dixon's Sentence and Resentence Him Under Section 1172.75*

As a preliminary matter, the People argue that, because Dixon's automatic appeal is pending in the Supreme Court, the superior court did not have jurisdiction to resentence him. The People contend section 1172.75 applies only to final cases, not to "non-final cases like Dixon's." Dixon argues section 1172.75 gives the superior court jurisdiction to conduct a resentencing hearing while an appeal is pending. Dixon is correct on this issue.

"The defendant's filing of a valid notice of appeal . . . typically divests the trial court of jurisdiction over any matter

8

affecting the judgment." (*People v. Velasco* (2023) 97 Cal.App.5th 663, 669 (*Velasco*); see *People v. Flores* (2003) 30 Cal.4th 1059, 1064.) "'"The purpose of the rule depriving the trial court of jurisdiction in a case during a pending appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment . . . by conducting other proceedings that may affect it."'" (*Velasco*, at pp. 669-670; see *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1089.) "However, jurisdiction survives where provided by statute." (*Velasco*, at p. 670; see *Flores*, at p. 1064.)

To determine whether the Legislature intended the superior court to retain jurisdiction under section 1172.75 while an appeal is pending, we begin with the language of the statute. Section 1172.75, subdivision (b), requires the Department to identify persons "currently serving a term" for a judgment that includes a now-invalid enhancement. The statute does not distinguish between judgments that are final and those that are not. If the court verifies the judgment includes an invalid enhancement, section 1172.7, subdivision (c), requires the court to recall the sentence and resentence the defendant. (§ 1172.75, subd. (c).) Dixon is a person "currently serving a term" that includes an invalid enhancement, which the superior court verified. Under the plain language of section 1172.75, he is entitled to have the court recall his sentence and resentence him on the non-death portions of his sentence. (Cf. *People v. Conley* (2016) 63 Cal.4th 646, 657 [section 1170.126, which "entitles all persons 'presently serving' indeterminate life terms imposed under" the three strikes law "to seek resentencing under" Proposition 36, "draws no distinction between persons serving

9

final sentences and those serving nonfinal sentences, entitling both categories of prisoners to petition courts for recall of sentence"].)

The court in *Velasco, supra*, 97 Cal.App.5th 663 addressed a similar issue. In that case the court held "section 1172.75 presents an exception to the general rule and vests the trial court with jurisdiction to conduct a resentencing hearing while an appeal is pending." (*Velasco*, at p. 671.) In *Velasco* the superior court held a resentencing hearing under section 1172.75 and struck an invalid prior prison term enhancement. (*Velasco*, at p. 667.) On appeal the defendant argued the superior court erred by not conducting a full resentencing and by holding the hearing in the defendant's absence. (*Ibid.*) The People argued the superior court lacked jurisdiction to conduct the resentencing hearing because the defendant had appealed from the superior court's order denying the Department's recommendation for resentencing under another provision, section 1172.1. (*Velasco*, at p. 668.)

The court in *Velasco* relied on its prior decision in *Portillo v. Superior Court* (1992) 10 Cal.App.4th 1829, which held "'a trial court is not divested of its limited jurisdiction under [section 1172.1] to recall a sentence for modification within 120 days of the defendant's commitment by the filing of an appeal notice.'" (*Velasco, supra*, 97 Cal.App.5th at p. 670.) In *Portillo* the court concluded that, to "hold the general rule, that a trial court loses jurisdiction to proceed in a matter after the filing of an appeal, supersedes or negates the specific rule for granting limited jurisdiction to the trial court to recall a sentence, enacted by the Legislature in light of existing law concerning a trial court's sentencing jurisdiction, would render meaningless the

10

long-established rules of statutory interpretation against surplusage and favoring a specific statute regarding a subject matter over one that is more general." (*Portillo*, at p. 1835.) The court in *Velasco* stated *Portillo* applied "with greater force to section 1172.75," because section 1172.75 "*mandated* recall of the relevant sentence enhancements and resentencing," whereas section 1172.1 merely "granted the trial court *discretion* to assert jurisdiction and recall a sentence within 120 days." (*Velasco*, at p. 671.) The court in *Velasco* concluded the time limits in section 1172.75, which require the superior court to recall sentences containing invalid enhancements and resentence defendants by December 31, 2023 (see § 1172.75, subd. (c)(2)), confirmed the Legislature intended the superior court to retain jurisdiction while an appeal is pending. (*Velasco*, at p. 672.) If section 1172.75 did not give the superior court jurisdiction to resentence a defendant with a pending appeal, the court in *Velasco* reasoned, defendants with invalid enhancements imposed before January 1, 2020 who had appeals pending in 2023 could not be resentenced within the time frame mandated by section 1172.75, "render[ing] these time limitations surplusage, which is a result we strive to avoid." (*Velasco*, at p. 672.)[3]

The *Velasco* court's reasoning applies with equal force here, where Dixon's pending appeal is an automatic appeal to the Supreme Court. When the Legislature enacted section 1172.75 in 2021, it was foreseeable that some defendants with invalid enhancements (i.e., those imposed before January 1, 2020, the effective date of Senate Bill No. 136) would still have direct

---

[3] The court in *Velasco* acknowledged the number of individuals in that category would likely "be minimal." (*Velasco*, *supra*, 97 Cal.App.5th at p. 672, fn. 6.)

11

appeals pending as of December 31, 2023, particularly capital defendants, whose automatic appeals take years to resolve. (See *Briggs v. Brown* (2017) 3 Cal.5th 808, 864 (conc. & dis. opn. of Cuéllar, J.) ["Direct appeals in this court are completed on average 11.7 to 13.7 years after the death judgment. [Citation.] Many appeals take considerably more time. . . . In April 2016, there were 337 direct appeals . . . pending in this court."].) Interpreting section 1172.75 to prohibit the superior court from resentencing a defendant with a pending appeal would conflict with the statute's mandate to do so by December 31, 2023. (See *People v. Curiel* (2023) 15 Cal.5th 433, 461 ["We must harmonize the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." (internal quotation marks omitted)]; *People v. Elliot* (2005) 37 Cal.4th 453, 478 [courts should ""avoid any interpretation that would lead to absurd consequences""]; *People v. Gallegos* (2024) 105 Cal.App.5th 434, 442 [courts should ""avoid a construction that would lead to unreasonable, impractical, or arbitrary results""].)

To support their contention section 1172.75 applies only to final judgments, the People rely on the court's statement in *People v. Newell* (2023) 93 Cal.App.5th 265 that the "Legislature passed Senate Bill No. 483 to allow prisoners whose judgments of conviction were *final* a procedure to obtain retroactive resentencing because of these recent changes to the sentencing law." (*Newell*, at p. 267, italics added.) But the issue in *Newell* was whether section 1172.75 authorized a prisoner, rather than the Department, to initiate resentencing (it doesn't). (*Newell*, at p. 268.) The court in *Newell* did not address whether the superior court had jurisdiction to resentence a defendant whose conviction

12

was not final; the court's reference to "final" judgments is not authority on the issue. (See *People v. Brooks* (2017) 3 Cal.5th 1, 110 ["a case is not authority for an issue that was not considered"].)

Relying on *People v. Morelos* (2022) 13 Cal.5th 722, the People argue Dixon may challenge his four prior prison term enhancements and "raise any resentencing claims related to recently enacted or ameliorative statutes" in supplemental briefing in his pending appeal in the Supreme Court.[4] In *Morelos*, an automatic appeal from a judgment of death, the People conceded Senate Bill No. 136 applied retroactively. (*Morelos*, at p. 769.) The Supreme Court affirmed the defendant's conviction and judgment of death, struck a prior prison term enhancement under Senate Bill No. 136, and remanded on a sentencing issue unrelated to the prior prison term enhancement. (*Morelos*, at pp. 769-770.) The People assert that, as in *Morelos*, the Supreme Court can strike or vacate Dixon's invalid enhancements when it rules on his automatic appeal. That the Supreme Court struck prior prison term enhancements on direct appeal in *Morelos*, however, does not mean the superior court

---

[4] There is no indication in the record, and the People do not contend, Dixon has asked the Supreme Court in his pending appeal to direct the trial court to resentence him under section 1172.75. (See *In re Carpenter* (1995) 9 Cal.4th 634, 646 [superior court may not interfere with appellate jurisdiction by considering an issue pending before an appellate court]; *People v. Mayfield* (1993) 5 Cal.4th 220, 224 [superior court "lacked the authority to grant habeas corpus relief . . . because the issue raised by the petition for writ of habeas corpus was also raised in the pending appeal to this court"].)

lacked jurisdiction to strike the enhancements and resentence the defendant while the automatic appeal is pending, an issue *Morelos* did not address.[5]

> 2. *Under Section 1172.75 the Superior Court May Resentence Dixon on the Noncapital Portions of His Sentence, But Not the Death Sentence*

Dixon argues that under section 1172.75 the superior court could have reduced his death sentence to a sentence of life without the possibility of parole.  The People argue "section 1172.75 does not implicate a judgment of death."  We conclude Dixon was entitled to resentencing on the noncapital portions of his sentence, but not the death sentence.

Prior to an amendment effective January 1, 2025 (which we will discuss), section 1172.75 said nothing about resentencing defendants sentenced to death.  Section 1172.75 contained one exception:  It did not apply to a prior prison term enhancement imposed for a conviction for a sexually violent offense.  (§ 1172.75, subd. (a).)  Had the Legislature wanted to exclude individuals sentenced to death, it could have done so, but it did not.  (Cf. *People v. Thompson* (2024) 106 Cal.App.5th 101, 122 ["under the plain language of section 1172.6, there is no carve-out for persons

---

[5]     Senate Bill No. 483 took effect January 1, 2022, seven months before the decision in *People v. Morelos*, *supra*, 13 Cal.5th 722.  The Supreme Court in *Morelos* stated in a footnote: "Section 667.5 was amended again in 2021 (Stats. 2021, ch. 626, § 28), but those amendments have no bearing on the analysis of the issue before us." (*Morelos*, at p. 769, fn. 4.)  The People do not argue this statement in the *Morelos* opinion means section 1172.75 does not apply in this case.

who are sentenced to death who meet the other criterial of the statute"].) Courts "'will not create an exception the Legislature did not enact.'" (*People v. Reed* (2024) 103 Cal.App.5th 43, 54; see *People v. Guzman* (2005) 35 Cal.4th 577, 587 ["'a court must not "insert what has been omitted" from a statute'"]; *Mamer v. Weingarten* (2025) 108 Cal.App.5th 169, 174 ["Where, as here, the Legislature has not created an exception, a court may not insert one into the statute."]; *People v. Atlas* (1998) 64 Cal.App.4th 523, 527 ["'It is not our function . . . to add language or imply exceptions to statutes passed by the Legislature.'"].) Therefore, the pre-2025 version of section 1172.75 applied to persons "currently serving a term for a judgment" (§ 1172.75, subd. (b)) that included an invalid prior prison term enhancement, including those, like Dixon, whose judgment includes a death sentence.

In 2024 the Legislature created an exception for some defendants sentenced to death, but because the amendment is not retroactive, it does not apply to Dixon. Effective January 1, 2025, Senate Bill No. 285 (2023-2024 Reg. Sess.) (Stats. 2024, ch. 979, § 2) added section 1172.75, subdivision (f), which renders ineligible for recall and resentencing an individual (1) who was convicted of a sexually violent offense, (2) who was sentenced to death or life without the possibility of parole, and (3) whose judgment had not been reviewed and verified by the superior court as of January 1, 2025.[6] Section 1172.75, subdivision (f),

---

[6] Section 1172.75, subdivision (f), states: "Commencing on January 1, 2025, an individual who has been convicted of a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code and sentenced

15

does not apply to Dixon because his judgment was reviewed and verified by the superior court before January 1, 2025. Nevertheless, the enactment of section 1172.75, subdivision (f), is significant:  It shows the Legislature thought it necessary to add the new subdivision because the Legislature recognized in 2024 that section 1172.75, as originally drafted, applied to defendants (like Dixon) sentenced to death.  According to an analysis by the Senate Rules Committee, Senate Bill No. 285 was intended to "close a loophole" in Senate Bill No. 483:  "'Recently, appeals have been made to the courts arguing that certain people serving sentences for capital and sexually violent offenses qualify for full resentencing under SB 483.  This interpretation does not align with the original bill's intent. . . .  [Senate Bill. No.] 285 clarifies who is eligible for resentencing under [Senate Bill. No.] 483 to . . . close a loophole in the original drafting.'"  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 285 (2023-2024 Reg. Sess.) as amended Aug. 19, 2024, p. 4; see *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 184 ["By amending the statute to close the loophole, the Legislature sought to *change* the law."].)

Because the pre-2025 version of section 1172.75 did not exclude persons serving death sentences, the superior court

---

to death or a life term without the possibility of parole, who, as of January 1, 2025, has not had their judgment reviewed and verified by the sentencing court as provided in subdivision (c), is not eligible for recall and resentencing under this section.  This subdivision does not apply retroactively."  Even as amended, section 1172.75 continues to apply to defendants sentenced to death, as long as they have not been convicted of a sexually violent offense.

16

should have stricken Dixon's four prior prison term enhancements.  In addition, the court had discretion to resentence Dixon on the stayed one-year firearm enhancement under section 12022, subdivision (b)(1), and the two stayed consecutive terms of 25 years to life on the rape convictions.  (See *People v. Garcia, supra,* 101 Cal.App.5th at p. 855 [section 1172.75 requires a full resentencing]; *People v. Monroe* (2022) 85 Cal.App.5th 393, 402 [same].)

Contrary to Dixon's contention, however, section 1172.75 did not authorize the superior court to reduce Dixon's death sentence to life without the possibility of parole.[7]  The "exclusive procedure for collateral attack on a judgment of death" is a petition for writ of habeas corpus under section 1509.  (§ 1509, subd. (a).)  Section 1509 was enacted by a voter initiative, the Death Penalty Reform and Savings Act of 2016 (Proposition 66).  Proposition 66 stated it may be amended by the Legislature only by a statute that passes each house of the Legislature by a three-fourths vote.  (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 66, § 20, p. 218; see Cal. Const., art. II, § 10 ["The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval."].)  Because Senate Bill No. 483, which enacted section 1172.75, passed the Assembly and the Senate with less than a three-fourths vote, it cannot have amended Proposition 66.

---

[7]     The only authorized sentence for special circumstance murder is death or life without the possibility of parole.  (See § 190.2, subd. (a); *People v. Morales* (2021) 67 Cal.App.5th 326, 348.)

17

In deciding whether Dixon's proposed interpretation of section 1172.75 would amend Proposition 66, "'we simply need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits.'" (*People v. Superior Court (Williams)* (2024) 102 Cal.App.5th 1242, 1259, review granted Aug. 28, 2024, S286128; see *People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571.) Interpreting section 1172.75 to allow resentencing on a death sentence would authorize what Proposition 66 prohibits: a collateral attack on a judgment of death by a procedural vehicle other than a writ of habeas corpus under section 1509. Therefore, when resentencing Dixon under section 1172.75, the superior court may not reduce Dixon's death sentence to life without the possibility of parole. (See *People v. Thompson*, *supra*, 106 Cal.App.5th at pp. 119, 131 [because section 1172.6 "cannot modify or amend section 1509," a capital defendant who was convicted under a now invalid theory of murder may obtain relief only by filing a petition for writ of habeas corpus under section 1509]; see also *Williams*, at p. 1260 ["applying the revised penalty provisions of the Three Strikes Reform Act to potentially reduce a defendant's indeterminate life term to a determinate term when the defendant is being resentenced under section 1172.75 due to an invalid prior prison term enhancement unconstitutionally amends the resentencing procedure and requirements set forth in section 1170.126 of the voter-approved Three Strikes Reform Act"]; *People v. Santos* (2024) 100 Cal.App.5th 666, 676 [same], review granted May 29, 2024, S284341; *People v. Superior Court (Guevara)* (2023) 97 Cal.App.5th 978, 982, 985 [same], review granted Mar. 12, 2024, S283305.)

18

### 3. Section 1172.75 Applies to Enhancements Imposed and Stayed Under Section 667.5, Former Subdivision (b)

Dixon argues the superior court erred in ruling that, because the trial court stayed execution of his enhancements, he was not entitled to a full resentencing under section 1172.75. The majority of courts that have considered the issue (which the Supreme Court granted review in *People v. Rhodius* (2023) 97 Cal.App.5th 38, review granted Feb. 21, 2024, S283169, to decide) have held section 1172.75 applies to all enhancements imposed under section 667.5, subdivision (b), executed or stayed. (See, e.g., *People v. Bravo* (2025) 107 Cal.App.5th 1144; *People v. Mayberry* (2024) 102 Cal.App.5th 665, review granted Aug. 14, 2024, S285853; *People v. Saldana* (2023) 97 Cal.App.5th 1270, review granted Mar. 12, 2024, S283547; *Christianson, supra,* 97 Cal.App.5th 300, review granted; see also *People v. Espino* (2024) 104 Cal.App.5th 188 [section 1172.75 applies to a prior prison term enhancement where the trial court imposed the enhancement but struck the punishment], review granted Oct. 23, 2024, S286987; but see *Rhodius*, at p. 45 [section 1172.75 applies only where an enhancement under section 667.5, subdivision (b), was imposed and executed].) Until the Supreme Court decides the issue, we agree with those courts that the word "imposed" in section 1172.75 includes "imposed and stayed." As the court in *Christianson* stated, "all that is required for the [Department] to identify an inmate under section 1172.75, subdivision (b) is for the enhancement to be included in the abstract of judgment, regardless of whether it is imposed or stayed. Had the Legislature intended for the language in subdivision (b) to limit the identification to those inmates that

19

would necessarily be required to serve an additional term based on the enhancement, it certainly could have done so." (*Christianson*, at p. 312; accord, *People v. Mani* (2022) 74 Cal.App.5th 343, 380; see *Mayberry*, at p. 674 ["Imposed-but-stayed prior prison term enhancements carry the possibility of execution."]; *Saldana*, at p. 1278 ["The presence of a stayed term or enhancement is not without significance; it is part of the sentence and remains available if its execution becomes necessary and proper for any legally sanctioned reason."].)

The People argue *Christianson*, *supra*, 97 Cal.App.5th 300, review granted, and *People v. Saldana*, *supra*, 97 Cal.App.5th 1270, review granted, are distinguishable because "Dixon is under a judgment of death." The People assert that, even if Dixon "were to obtain penalty phase relief on direct appeal, and assuming the California Supreme Court upholds the true finding on the robbery and kidnapping special circumstances, he would still be subject to a sentence of life without the possibility of parole," and "a prior prison term enhancement does not have the potential to increase the sentence of a defendant who will already spend the rest of his life in prison." True enough. But if the Supreme Court reverses the murder conviction, or if it affirms the murder conviction but reverses the special circumstance findings, Dixon may be resentenced to life with the possibility of parole. Indeed, when the trial court sentenced Dixon, it ordered that, if the death sentence was reversed, modified, or reduced, the stays on the terms for the rape convictions and the enhancements would be lifted and those terms executed. (See *People v. Gonzalez*, *supra*, 43 Cal.4th at p. 1128 [imposing and staying the execution of the sentence on an enhancement preserves "'the possibility of imposition of the stayed portion

20

should a reversal on appeal reduce the unstayed portion of the sentence'"].)

4. *The Superior Court Erred in Staying Rather Than Striking the Enhancements Under Section 667.5, Former Subdivision (b)*

The superior court ordered Dixon's prior prison term enhancements under section 667.5, former subdivision (b), to be "permanently stayed." Section 1172.75, however, requires the court to strike the invalid enhancements. (See *People v. Garcia, supra,* 101 Cal.App.5th at p. 855; *People v. Monroe, supra,* 85 Cal.App.5th at p. 402.) The superior court should have stricken Dixon's four prior prison term enhancements.

## DISPOSITION

The order is reversed. The superior court is directed to vacate its order, strike Dixon's prior prison term enhancements, and resentence Dixon on the rape convictions and the firearm enhancement, in accordance with section 1172.75. The superior court is also directed to prepare a new abstract of judgment and send it to the Department.

SEGAL, J.

We concur:

MARTINEZ, P. J.                    STONE, J.

21